CALOGERO, Justice.
The Plaquemines Parish Board of Supervisors of Elections, composed of Samuel C. Pizzolato, Rev. Joseph N. Taylor and Roy Lyons, met on October 4, 1975, in conformity with R.S. 18:400 as amended by Act 1 of 1975, to select commissioners for the Primary Election to be held on November 1, 1975.
The three local Democratic candidates for the 105th Representative District had each submitted lists of proposed commissioners. Although there were no local Republican candidates running for office, a separate list of prospective commissioners had been submitted for Lance A. Britton, a non-local candidate (for Lt. Governor) by *543 Paul J. Chapetta, Chairman of the Pla-quemines Parish Republican Executive Committee.
When the Board met they combined the proposed Democratic commissioners submitted by the local Democratic candidates and the proposed Republican commissioners submitted by Mr. Chapetta for Mr. Britton, from which they drew the commissioners to serve on November 1, 1975. In selecting the commissioners, they were especially cognizant of the provision of R. S. 18:400(D), that the Republican party “shall be entitled to be represented by at least one commissioner in each voting precinct.”
Thereafter one Charles Sheffield Brown, a Democratic candidate for state representative from the 105th Representative District filed a lawsuit against defendants, seeking to enjoin them from issuing commissions to the poll commissioners who had been selected on October 4th, and seeking to have defendants ordered to re-select commissioners from only those lists submitted by the three Democratic House candidates.
The district court issued a temporary restraining order and after a hearing on Friday, October 10, 1975, issued a preliminary injunction and mandamus as prayed for.
The defendants filed a motion for a sus-pensive appeal which was denied. They thereupon applied for writs of certiorari and prohibition to the Fourth Circuit Court of Appeal. Their application was denied by a divided court.
Defendants then sought writs from this Court which were granted on Friday, October 17, 1975.
The case was specially fixed for oral argument on Monday, October 20, 1975.
The issue involved in this case is whether the district court erred in its interpretation of R.S. 18:400, as amended by Act 1 of 1975.
The question presented is whether the Board’s selection of commissioners, including Republicans, was in violation of statutory law.
The Legislature, in its 1975 regular session, revised the laws governing elections in the State of Louisiana. La.R.S. 18:400 now provides for the submission and selection of commissioners in primary elections, i. e., the first of two successive elections now provided for by law.
La.R.S. 18:400(A) provides that each local candidate in any parish may submit a list of proposed commissioners and provides a time frame in which those lists are to be submitted. La.R.S. 18:400(B) sets forth the number of proposed commissioners which a candidate may submit. La.R. S. 18:400(C) establishes the day on which the respective Boards of Supervisors shall meet and the manner in which commissioners shall be selected. La.R.S. 18:400(D) provides that in every primary election each political party having one or more candidates for office shall be entitled to be represented by at least one commissioner in each voting precinct, where such a candidate or candidates are to be voted upon. La.R.S. 18:400(E) provides for the situation where there are state and/or district but no local offices at stake in the election, in such event permitting state and/or district office candidates to submit commissioners.
The district court held that La.R.S. 18:400(E)’s provision allowing non-local candidates to submit commissioners was inapplicable because there are in the November 1 election local offices to be voted upon. Thus, the non-local Republican candidate Britton, was barred from submitting commissioners, and the Board directed to select commissioners without the inclusion therein of Republican commissioners.
*544 Basically, under the statute, if in a primary there are local offices to be nominated, local candidates[1] alone are permitted to submit lists of proposed commissioners.
If in any primary held to nominate candidates for state and/or district offices there should be no local office(s) to be nominated at the same time, the respective candidates for the state and/or district offices are permitted to submit lists of proposed commissioners. R.S. 18:400(E).
Consequently, where, as in the case at hand, a primary is being held to nominate state/district offices (non-local candidates being the contestants) and local offices, and there are no local candidates affiliated with the same political party with which a given state/district candidate is affiliated (the present plight of Mr. Britton), there is no specifically applicable provision of R.S. 18:384-423 (Act 1 of 1975) prescribing that the state/district candidate may submit commissioners.
However, there is a very clear provision in the statute designed to assure poll commissioner representation for each political party having a state/district candidate, such as the Republican Party in this instance, the result of which is to afford party representation in each polling place. That section, R.S. 18 ¡400(D) provides
“D. Notwithstanding any provisions of this Part to the contrary, in every primary election held under the provisions of this Part each political party having one or more candidates for office shall be entitled to be represented by at least one commissioner in each voting precinct where such a candidate or candidates are to be voted upon in the manner hereinafter provided.
“In the event that two or more political parties each have a candidate or candidates whose name appears on the ballot in that precinct and if during the drawing of the commissioners at least one of the commissioners does not represent each of the political parties, then the person selected by the board of supervisors to draw the balls from the wheel or receptacle shall dispose of the same number of balls that there are political parties to be represented, beginning with the last ball drawn which represents a political party for which a commissioner has already been selected. The person shall then draw another ball to replace the last such ball and continue such action until a commissioner is selected to fulfill the requirements hereof. The person shall continue the selection until each political party is represented by at least one commissioner.” (Emphasis provided)
The statute does not provide the method for submission of the one commissioner per precinct (to which the political party, even with only non-local candidates is entitled). Nonetheless, it would in our view be both illogical and contrary to the clear provision of R.S. 18:400(D), to conclude thereby that such party shall be denied the commissioners to which the statute unequivocally states they are entitled.[2]
*545 Several other provisions of Act 1 of 1975 support the result which we have reached here. With respect to 18:400(D) which, as we earlier indicated, mandates that each political party having one or more candidates for office shall be entitled to be represented by at least one commissioner in each voting precinct, the second paragraph thereof (see above) specifies how in drawing the balls from the wheel or receptacle, the Board of Supervisors of Elections shall proceed so as to be certain that each of the political parties having a candidate on the ballot, shall have a commissioner chosen from the wheel. The necessary inference, of course, is that the Board of Supervisors of Elections shall have taken prior action to see that there was placed in the wheel commissioners representing each of the political parties.
Then, too, there is the general authority of the Board of Supervisors of Elections with respect to the selection of commissioners. R.S. 18:399 provides that “the primary election shall be conducted at each polling precinct by five commissioners who shall be commissioned in each parish by the board of supervisors of elections. . . ."
Furthermore the Board of Supervisors of Elections is specifically empowered to supply the names of additional proposed commissioners when necessary to bring the number of proposed commissioners to five in each precinct, whether there are local offices to be filled (see R.S. 18:400(B), last sentence) or there are not local offices to be filled (see R.S. 18:400(E), last sentence) .
There should therefore be corollary authority in the Board of Supervisors of Elections to supply names of proposed commissioners for a political party having “one or more candidates for office” (R.S. 18:400(D)) but no local candidate, under both their general authority and obligation to select commissioners, R.S. 18:399, and their obligation to have each party with one or more candidates for office represented by one commissioner in each precinct (R.S. 18:400(D)).
The absence from the statute of the specific procedure the Board should follow, where there are local offices at stake and only non-local candidates of a given party, to comply with R.S. 18:400(D)’s requirement that each political party “shall be entitled to be represented by at least one commissioner in each voting precinct” is insufficient reason to permit circumvention of the otherwise clear and directly applicable provisions hereinabove discussed, requiring representation at the polls by each political party, at least when a political party has submitted proposed commissioners.
In the case at hand the Board of Supervisors of Elections respected the statute’s requirement by including in the proposed commissioners from which the commissioners to serve were drawn a list of proposed Republican Commissioners (those submitted by the Chairman of the Plaquemines Parish Republican Executive Committee on behalf of the non-local Republican candidate) .
It is unnecessary for us to decide in this case whether the Board was bound to use the Republican commissioners proposed on behalf of Mr. Britton. We do believe, however, that the Board’s use of these proposed Republican commissioners was a reasonable implementation of the statutory requirement that Mr. Britton’s Republican party be afforded representation by “at least one commissioner in each voting precinct”. Consequently, the district court should not have enjoined the Board and mandated a re-selection of commissioners.
Act 1 of 1975 adopts a new open election system by which separate party primaries have been done away with. R.S. 18:400(D) was obviously included in the Act so as to guarantee representation of *546 each political party at the polls [3] and, hopefully to insure each candidate and each political party an opportunity for some measure of protection against election irregularity.
The construction which we place on the statute is not only what we consider to be the proper, logical and correct one, but also that which serves the unmistakable intent and purpose of the legislation.
For the foregoing reasons the judgment of the district court is reversed, and plaintiff’s suit dismissed at his cost.

. R.S. 18:384 Definitions
“When used in this Part:

(2) ‘Local candidates’ means and includes (a) candidates for membership in either house of the legislature and (b) candidates for any parish, ward or municipal office, except those for justice of the peace or constable.
(3) ‘Non-local candidates’ means all candidates who are not ‘local candidates.’

. Counsel for plaintiff has a contrary view. He says that the statute does not mandate commissioner representation because the statute says only that the political party “shall be entitled to be represented by” rather than “shall be represented by.” Additionally he says that “in the manner hereinafter provided” restricts the party’s entitlement, to circumstances set forth in the statute, i. e., where a given party has local candidates in an election involving local offices. For reasons more fully developed elsewhere in this opinion we disagree with counsel’s not entirely implausible argument.

. When Senate Bill # 274 (later Act 1 of 1975) passed the Senate the present subsection D was not included. The present subsections A, B, C, E, P apparently had been copied largely from existing primary election law in which there were candidates affiliated only with the party conducting the primary. Subsection D was inserted as an amendment (amendment #48) by the House Committee on House and Governmental Affairs. It was adopted to provide representation at the polls for candidates of all political parties. “ . Other amendments adopted by the committee included: (1) An amendment offered by Mr. Freeman on behalf of Mr. Lancaster to provide that each political party having one or more candidates for office in any primary shall he entitled to at least one commissioner in each voting precinct where such candidate (s) is voted on. ” 5/28/75 supplement to committee report, Committee on House and Governmental Affairs, Vernon J. Gregson, Chairman, relative to Senate Bill #274.