LEMMON, Judge.
This election case poses the following question: Does R.S. 18:400 D entitle the sole Republican party candidate in an election to be represented by at least one commissioner in each voting precinct, even though he has not submitted a list of proposed commissioners within the time limit stated in R.S. 18:400 A.[1] We answer no and reverse that portion of the trial court judgment which ordered the Board of Supervisors of Elections for the Parish of Orleans to allow Raymond Mix to submit his list.
I
Mix was the only candidate of the Republican party who qualified for the office of Councilman, District B, for the election scheduled to be held in the City of New Orleans on October 2, 1976. He did not submit a list of proposed commissioners pri- or to August 23, 1976, the deadline for doing so in this election, as calculated from R.S. 18:400 A.
Prior to the deadline five candidates of the Democratic party for the same office or for the office of Councilman-at-Large submitted various lists of proposed commissioners, each list naming one proposed commissioner for each precinct. These candidates collectively listed the same five commissioners in each precinct who had served in the judge and school board elections on August 14, 1976.[2] As a result exactly five persons were proposed as commissioners in each and every precinct.
After the deadline had passed for submitting lists of proposed commissioners, the Board dispensed with the meeting required by R.S. 18:400 C for the purpose of select *535 ing commissioners, inasmuch as the Board considered no selection process necessary.[3]
On September 1, 1976 Mix attempted to submit a list of proposed commissioners (although he admitted he had been aware of the deadline imposed by R.S. 18:400 A). Since the deadline for submitting the list had passed, the Board refused to allow Mix to submit a list.
Mix then filed this mandamus action, seeking to require the Board to comply with the statutory selection procedures and to allow the Republican party to be represented by a commissioner in each precinct. After a summary trial on the merits, the trial court (1) ordered the Board to conduct a meeting at a specified date and time, and (2) granted Mix the right to submit a list of proposed commissioners prior to the meeting. The Board immediately filed this appeal.
II
The central issue is one of statutory construction.
Mix’s position in this controversy is that R.S. 18:400 D mandates that each political party having a candidate for office shall be entitled to be represented by at least one commissioner in each voting precinct, notwithstanding any other provisions of the open election system. Since he is the only Republican candidate, he contends (1) that he (or the party) is absolutely entitled to a commissioner in each precinct, notwithstanding his noncompliance with the deadline for submitting his list, and “regardless of the ‘wheel procedure’ ” for selecting commissioners, and (2) that he is certainly entitled under the facts of this case, where he attempted to submit a list prior to the date specified for the Board’s meeting to conduct the wheel procedure.
R.S. 18:400 D’s grant of entitlement to at least one commissioner “(n)otwithstanding any provisions of this Part to the contrary” contemplates that the statute shall prevail over any contrary provisions. Thus, in Brown v. Plaquemines Parish Bd. of Supervisors of Elections, 320 So.2d 542 (La.1975), the court held that when R.S. 18:400 A authorized only local candidates to submit lists of proposed commissioners (and thus prohibited non-local candidates from doing so), that was a provision contrary to R.S. 18:400 D’s grant of entitlement, and the court concluded that the latter provision must prevail. We emphasize that there was a conflict between provisions in that case, since the Republican candidate in the Brown case had absolutely no chance of ever having a commissioner under strict application of the local candidate provision.
In the present case, however, Mix, as a local candidate, could have submitted a list of proposed commissioners within the time specified. Thus, R.S. 18:400 A’s provision that a candidate may submit the list within the specified time (impliedly meaning that he may not submit a list thereafter) is not a provision contrary to R.S. 18:400 D’s grant of entitlement to at least one commissioner. Indeed, Mix not only was authorized by R.S. 18:400 A to submit a list, but also was guaranteed by R.S. 18:400 D that at least one of the persons he submitted in each precinct would be selected as a commissioner. He knowingly chose not to do so and now contends he (or his party) nevertheless is absolutely entitled to a commissioner in each precinct.
We hold there is no conflict between the pertinent provisions in this case and that R.S 18:400 D simply guarantees a commissioner to a party when at least one candidate of that party makes a timely request. We therefore conclude that while Mix (and the Republican party) was “entitled to be represented by at least one commissioner in each voting precinct”, he waived his entitlement by not complying with the other reasonable, non-contrary *536 provision for securing this representation. Accordingly, we reverse that portion of the judgment of the trial court which declared that he has a right to submit a list of proposed commissioners.
III
We agree with that portion of the trial court’s judgment which orders the Board to meet to select the commissioners.
R.S. 18:400 C requires the Board to meet at a specified time and place and to hold a public drawing of the commissioners. The statute contemplates that five properly qualified commissioners will be named and certified at this meeting. One purpose of the statute is to insure that each candidate who has properly submitted a list will have a fair opportunity of having his qualified representatives chosen and of challenging unqualified or improperly submitted or selected representatives of other candidates. Even if the Board determines that exactly five persons have been properly proposed as commissioners in each precinct and that no drawing is therefore necessary, that determination must be made at an open meeting at the time and place specified in the statute. A telephone conference, or a closed meeting at another time or place, does not fulfill the requirements or the purpose of the statute.
We therefore affirm that part of the judgment ordering a meeting, and we refix the time and date.
DECREE
For these reasons, that portion of the judgment of the trial court which declares that Raymond A. Mix has the right to submit a list of proposed commissioners for each precinct in District B is reversed.
That portion of the judgment of the trial court which orders the Board of Supervisors of Elections, Parish of Orleans, to meet to select poll commissioners in accordance with R.S. 18:400 C is amended to fix the time of the meeting at 10:00 a.m. on Tuesday, September 21, 1976, and as amended, that portion of the judgment is affirmed.

REVERSED IN PART, AMENDED AND AFFIRMED IN PART.

. R.S. 18:400 A and D provides in pertinent part as follows:
“A. Each local candidate in any parish may, on or before 5:00 p.m. of the fortieth day prior to the date of any primary election ordered to be held in the district or parish, submit a list of proposed commissioners for each precinct in the parish where the candidate is to be voted for. The list shall be legibly written, or, by preference, typed, giving the post office address of each person on the list, together with the precinct or poll in the ward or parish in which the proposed commissioner is to serve.
“D. Notwithstanding any provisions of this Part to the contrary, in every primary election held under the provisions of this Part each political party having one or more candidates for office shall be entitled to be represented by at least one commissioner in each voting precinct where such a candidate or candidates are to be voted upon in the manner hereinafter provided.
“In the event that two or more political parties each have a candidate or candidates whose name appears on the ballot in that precinct and if during the drawing of the commissioners at least one of the commissioners does not represent each of the political parties, then the person selected by the board of supervisors to draw the balls from the wheel or receptacle shall dispose of the same number of balls that there are political parties to be represented, beginning with the last ball drawn which represents a political party for which a commissioner has already been selected. The person shall then draw another ball to replace the last such ball and continue such action until a commissioner is selected to fulfill the requirements hereof. The person shall continue the selection until each political party is represented by at least one commissioner.”

. The record indicates that both Republicans and Democrats were included among those thus proposed as commissioners, but does not show whether or not there was a Republican commissioner in each precinct.

. Since there were exactly five persons proposed as commissioners in each precinct, the Board reasoned it was not necessary to draw to determine which of the persons proposed would serve as commissioners and which would serve as poll watchers (as would have been necessary if more than five had been proposed), nor was it necessary to supplement the lists (as would have been necessary if less than five had been proposed).